IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAYMON GREGORY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. No. 12-1728-SLR |
| | ) | |
| PHILIP MORGAN, Warden, | ) | |
| and ATTORNEY GENERAL OF | ) | |
| THE STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents. | ) | |

---

Daymon Gregory.  Pro se petitioner.

Maria T. Knoll.  Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for respondents.

---

**MEMORANDUM OPINION**

January  6  , 2016
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Petitioner Daymon Gregory ("petitioner") was incarcerated at the Howard R. Young Correctional Institution in Wilmington, Delaware when he filed the application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 presently pending before the court. (D.I. 3) For the reasons that follow, the court will dismiss his application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As set forth by the Delaware Supreme Court in *Gregory v. State*, 31 A.3d 76 (Table), 2011 WL 4985654 (Del. Oct. 19, 2011), the facts leading to petitioner's arrest and conviction are as follows:

> On February 4, 2010, while [petitioner] was in an upstairs bedroom at 508 North Spruce Street in Wilmington, the police executed a search warrant on the premises. Detective Matthew Hazzard testified that [petitioner] told police under questioning that marijuana could be found in the dresser of his bedroom in that building. Police then searched the room [petitioner] described and located the marijuana. They also found an ID and receipt in [petitioner's] name, two boxes of clear sandwich bags, four bags of marijuana, several bags with marijuana residue, a scale, and over one thousand dollars cash. [Petitioner] was later indicted on three drug related charges, including maintaining a dwelling for controlled substances.
>
> [Petitioner] disputed the police account. He testified that the room in question was his brother's, not his, and that on the day of the search he was spending time with his brother, who had left the building to go to a store shortly before the police arrived. [Petitioner] acknowledged that he was smoking marijuana in the room that day, but claims that he never told police that the room was his. Rather, [petitioner] claims he told the police that they would probably find marijuana in his brother's room if they searched it. A neighbor who occasionally wrote out rent receipts testified that he had done so for [petitioner's] brother, but never [petitioner]. During his closing argument, [petitioner's] defense counsel attached the State's reliance on a receipt, found in the room and bearing [petitioner's] name, as evidence that the room was in fact [petitioner's]. Defense counsel also argued that other receipts found in the room – not bearing [petitioner's]

name --- were exculpatory evidence that the State should have but did not turn over.

*Gregory*, 2011 WL 4985654, at *1.

Petitioner was arrested on February 4, 2010, and subsequently indicted on charges of possession with intent to deliver marijuana, maintaining a dwelling for controlled substances, and possession of drug paraphernalia. In November 2010, a Superior Court jury convicted petitioner of all three charges. Following a pre-sentence investigation, the Superior Court sentenced petitioner as follows: mandatory three years at Level V incarceration, followed by six months at Level III incarceration, for the possession with intent to deliver marijuana conviction; twenty-two days at Level V incarceration, suspended for one year at Level III incarceration for maintaining a dwelling for controlled substances; and one year at Level V incarceration, suspended for one year at Level III incarceration for the possession of drug paraphernalia conviction. Petitioner appealed, and the Delaware Supreme Court affirmed his convictions and sentences. *See Gregory*, 2011 WL 4985654, at *5.

In May 2012, petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") asserting, *inter alia*, ineffective assistance of counsel. (D.I. 16, Rule 61 Motion in *State v. Gregory*, No. 1002002739) The Superior Court denied the Rule 61 motion in November 2012. (D.I. 16, *State v. Gregory*, Case No. 1002002739, Order (Del Super. Nov. 30, 2012)) Petitioner did not appeal that decision.

Petitioner timely filed a § 2254 application in this court.  (D.I. 3)  The State filed

an answer, arguing that the court should deny the application because four claims are

procedurally barred and one does not warrant relief under § 2254(d).  (D.I. 14)

## III.  GOVERNING LEGAL PRINCIPLES

### A.  Exhaustion and Procedural Default

A federal court may consider a habeas petition filed by a state prisoner only "on

the ground that he is in custody in violation of the Constitution or laws or treaties of the

United States." 28 U.S.C. § 2254(a).  One prerequisite to federal habeas review is that

a petitioner must exhaust all remedies available in the state courts.  *See* 28 U.S.C. §

2254(b)(1).  The exhaustion requirement is grounded on principles of comity to ensure

that state courts have the initial opportunity to review federal constitutional challenges to

state convictions.  *See Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir. 2000).  A petitioner

satisfies the exhaustion requirement by "fairly presenting" the substance of the federal

habeas claim to the state's highest court, either on direct appeal or in a post-conviction

proceeding, and in a procedural manner permitting the state courts to consider it on the

merits.  *See Duncan v. Henry,* 513 U.S. 364, 365 (1995); *Castille v. Peoples,* 489 U.S.

346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural

rules preclude him from seeking further relief in state courts.  *See Lines v. Larkins,* 208

F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989).  Although

treated as technically exhausted, such claims are nonetheless procedurally defaulted.

*See Lines,* 208 F.3d at 160; *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991).

3

Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United*

4

*States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496.  A petitioner establishes

actual innocence by asserting "new reliable evidence - -whether it be exculpatory

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that

was not presented at trial," showing that no reasonable juror would have voted to find

the petitioner guilty beyond a reasonable doubt.  *Hubbard v. Pinchak*, 378 F.3d 333,

339-40 (3d Cir. 2004).

## B.  Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the

federal court must review the claim under the deferential standard contained in 28

U.S.C. § 2254(d).  Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be

granted if the state court's decision was "contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the Supreme Court of

the United States," or the state court's decision was an unreasonable determination of

the facts based on the evidence adduced in the trial.  28 U.S.C. § 2254(d)(1) & (2); *see*

*also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d

Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. §

2254(d) if the state court decision finally resolves the claim on the basis of its

substance, rather than on a procedural or some other ground.  *See Thomas v. Horn*,

570 F.3d 105, 115 (3d Cir. 2009).  The deferential standard of § 2254(d) applies even

"when a state court's order is unaccompanied by an opinion explaining the reasons

relief has been denied"; as recently explained by the Supreme Court, "it may be

presumed that the state court adjudicated the claim on the merits in the absence of any

indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011). The Supreme Court recently expanded the purview of the *Richter* presumption in *Johnson v. Williams*, 133 S.Ct. 1088 (2013). Pursuant to *Johnson*, if a petitioner has presented the claims raised in a federal habeas application to a state court, and the state court opinion addresses some but not all of those claims, the federal habeas court must presume (subject to rebuttal) that the state court adjudicated the unaddressed federal claims on the merits. *Id.* at 1095-96. The consequence of this presumption is that the federal habeas court will then be required to review the previously unaddressed claims under § 2254(d) whereas, in the past, federal habeas courts often assumed "that the state court simply overlooked the federal claim[s] and proceed[ed] to adjudicate the claim[s] de novo." *Id.* at 1091-92.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

Petitioner's application presents the following four grounds for relief:[1]  (1) defense counsel provided ineffective assistance by failing to object to the State's alleged suppression of favorable evidence, namely, receipts with another person's name; (2) the lead detective in the case committed perjury; (3) the drug paraphernalia was not tested for DNA or fingerprints; (4) defense counsel provided ineffective assistance by: failing to raise the issue that the drug paraphernalia was not tested for DNA or fingerprints; by failing to relay information to conflict counsel; and by failing to inform petitioner of the appellate decision until March 2011; and (5) the State engaged in prosecutorial misconduct by making improper comments during closing argument.

### A.  Claims One, Two, Three, Four:  Procedurally Barred

Petitioner did not exhaust state remedies for claims one, two, three, and four, because he did not present claims two and three to the Delaware Supreme Court on direct appeal, and he did not present claims one and four to the Delaware Supreme Court on post-conviction appeal.  At this juncture, any attempt to present these claims in a new Rule 61 motion would be time-barred under Rule 61(i)(1).  As such, the court must treat all four claims as exhausted but procedurally defaulted, which means that it cannot review the claims on their merits unless petitioner demonstrates cause and prejudice, or a miscarriage of justice.

---

[1]Claim two in petitioner's application asserts two grounds for relief: the lead detective committed perjury and the prosecutor made improper statements.  For ease of analysis, the court has separated these two allegations into separate claims, such that claim two asserts that the detective perjured himself and claim five asserts that the State's improper comments during closing argument constituted prosecutorial misconduct.

Petitioner attempts to establish cause for his default of claims two and three by blaming defense counsel for not raising these issues during the trial or on direct appeal. A claim of ineffective assistance of counsel can only constitute cause for the procedural default of another claim if the ineffective assistance of counsel claim is itself exhausted. *See Edwards*, 529 U.S. at 451-52. Here, although petitioner complained about counsel's failure to raise these issues during the trial or on direct appeal to the Superior Court in his Rule 61 motion, petitioner did not appeal the Superior Court's denial of that motion to the Delaware Supreme Court. Consequently, the issue of counsel's failure to raise claims two and three at trial or on direct appeal is itself procedurally defaulted, and cannot excuse petitioner's procedural default of claims two and three. *Id.* In turn, even though petitioner presented the ineffective assistance allegations contained in claims one and four in his Rule 61 motion, his failure to appeal the Superior Court's denial of those claims to the Delaware Supreme Court means that the claims are also procedurally defaulted.

Petitioner does not assert any reason for his failure to appeal the denial of his Rule 61 motion. The State appears to contend that the Supreme Court decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012) provides an avenue for petitioner to establish cause for his default because counsel was not appointed to represent him during his Rule 61 proceeding in the Superior Court. The court disagrees. In *Martinez*, the Supreme Court held for the first time that inadequate assistance of counsel during an initial-review state collateral proceeding, or the absence of counsel during the initial-review state collateral proceeding, may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel, provided that the underlying

8

ineffective assistance of trial counsel claim is substantial, and that petitioner was prejudiced. *Id.* at 1316, 1320. This narrow rule does not aid petitioner, because his default of these four claims does not stem from the failure to raise the claims during the initial-review collateral proceeding, namely, his Rule 61 motion. Rather, the procedural default stems from petitioner's failure to appeal the denial of his Rule 61 motion. Therefore, the *Martinez* rule is inapplicable, and the Superior Court's failure to appoint counsel to represent petitioner in his initial Rule 61 proceeding does not provide cause to excuse the default of these claims.

In the absence of cause, the court need not address the issue of prejudice. Additionally, the court concludes that the miscarriage of justice exception to the procedural default doctrine does not excuse petitioner's default, because he has failed to provide new reliable evidence of his actual innocence that was not available at trial. For all of these reasons, the court will deny claims one, two, three, and four as procedurally barred from federal habeas review.

## B. Claim Five: State's Prosecutorial Misconduct During Closing

In claim five, petitioner succinctly asserts that his conviction was obtained by "improper statements from the prosecutor." (D.I. 3 at 4) Although petitioner does not provide any explanation for this contention, the court liberally construes claim five to be alleging the same claim of prosecutorial misconduct petitioner raised on direct appeal, namely, that the prosecutorial misconduct occurred during three discrete portions of the prosecutor's summation. The Delaware Supreme Court denied the instant prosecutorial misconduct claim as meritless. Therefore, petitioner will only be entitled to federal

habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

In order for a prosecutorial misconduct claim to warrant federal habeas relief, the prosecutor's comments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180 (1986). A prosecutorial misconduct claim must be examined in "light of the record as a whole" in order to determine whether the conduct "had a substantial and injurious effect or influence" on the jury's verdict. *Brecht v. Abramson*, 507 U.S. 619, 638 (1993). Pursuant to Third Circuit precedent, this inquiry involves examining "the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95 (3d Cir. 2001). Simply alleging misconduct fails to establish a violation of due process because the focus of the *Darden* inquiry is the unfairness of the trial, not the conduct of the prosecutor. *See Smith v. Phillips*, 455 U.S. 209, 219 (1982).

Here, although the Delaware Supreme court did not cite federal constitutional law during its analysis of petitioner's prosecutorial misconduct claim, its focus on whether the prosecutor's conduct prejudicially affected petitioner's substantial rights mirrors the inquiry required by *Darden* and its progeny. Thus, the Delaware Supreme Court's decision was not contrary to clearly established federal law.

The court further concludes that the Delaware Supreme Court's decision involved a reasonable application of *Darden* and its progeny. On direct appeal, petitioner alleged that the State made three improper statements during summation. The State's first

10

comment called into question the credibility of petitioner's testimony, reminding the jury

of petitioner's interest in avoiding conviction:

> What does [petitioner] have at stake today when he testified?  Well, he's on trial.
> He certainly doesn't want to be convicted.  You, ladies and gentlemen of the jury,
> have to evaluate his credibility. Is he believable?  Can you give weight –

(D.I. 16, Trial Transcript Nov. 29, 2010, at 48)  The defense objected that it was

improper for the State to tie petitioner's decision to testify with a desire not to be

convicted, and moved for a mistrial.  *Id.* at 48-9.  The trial court overruled defense

counsel's objection to this statement and denied the motion for a mistrial, ruling that the

State did not make an "impermissible connection" because petitioner "testified and

placed his credibility in issue."  *Id.* at 49.  The trial court explained that "the defendant is

like any other witness, and the credibility can be evaluated and weighed by the jury."  *Id.*

On direct appeal, petitioner contended that the State's comment improperly inferred that

he would lie to avoid conviction.  *See Gregory*, 2011 WL 4985654, at *2.  However, the

Delaware Supreme Court upheld the trial court's ruling, explaining that the State did not

directly refer to petitioner as a liar or express his personal belief about the truth of

petitioner's testimony, but merely reminded the jury of its duty to weight the evidence,

including negative inferences of bias permissible under Delaware Rules of Evidence.

The court has reviewed the transcripts and concurs with the Delaware Supreme Court's

determination that the State did not directly refer to petitioner as a liar or express an

opinion about the truth of petitioner's statement.  Moreover, it is well-settled that a

prosecutor may attack a defendant's credibility to the same extent as any other witness

if the defendant testifies at trial.  *See Fahy v. Horn*, 516 F.3d 169, 203 (3d Cir. 2008).

Thus, the court concludes that the Delaware Supreme Court's denial of this portion of

claim five involved a reasonable application of *Darden* and its progeny because the

State's first statement was not improper.

Petitioner also challenged on direct appeal two other comments made by the

State during its closing argument. The first comment concerned Detective Hazzard's

testimony:

> You have heard Detective Hazzard testify last week that when he walked in, [petitioner] said you'll find marijuana in the dresser, in his room. Those were Detective Hazzard's words. Now, the defense has tried to re-characterize and alter that statement as much as it could, but the State would you –

(D.I. 16, Trial Transcript Nov. 29, 2010, at 59)  Defense counsel objected, and the trial

court sustained the objection from the bench. Defense counsel did not request a

curative instruction or move for a mistrial.

The second comment summarized key evidence supporting the charges against

petitioner: "All the other issues raised by the defense, the State would submit, try to

confuse and obscure the evidence, based on the physical evidence –"

(D.I. 16, Trial Transcript Nov. 29, 2010, at 61)  Defense counsel objected, the trial court

sustained the objection, and the State concluded its argument. Defense counsel asked

for a sidebar conference and moved for a mistrial on the grounds that the State had

denigrated the role of defense counsel by saying an attempt was being made to

obscure evidence. The trial court denied the motion, finding insufficient prejudice

because the objection was sustained and the State ended up abandoning the line of

argument.

On direct appeal, petitioner contended that the trial court improperly denied the

motion for a mistrial with respect to the two aforementioned comments. The Delaware

Supreme Court found that both of the State's comments were improper, but affirmed the trial court's denial of the motion for mistrial for three reasons: (1) "the overwhelming weight of the evidence favored the State"; (2) the more improper prosecutorial comment regarding defense counsel's intent to "confuse and obscure the evidence" concerned an issue only tangentially addressed at trial, and was not central to the case; and (3) the trial court's decision to sustain the objections to the two improper comments sufficiently mitigated any possible prejudice to petitioner, because it caused the State to shift its line of argument. See Gregory, 2011 WL 4985654, at *3-*5.

After reviewing the record, the court concludes that the Delaware Supreme Court's denial of petitioner's argument regarding the State's two improper comments constituted a reasonable application of Darden and its progeny. To begin, the "quantum of evidence" against petitioner was substantial. For instance, the police found petitioner alone in the rear second-floor bedroom. The SWAT team secured petitioner and the other occupants of the home. In response to a police officer's questions, petitioner acknowledged that his bedroom was the rear bedroom on the second floor where he was initially found, and that the dresser in that room contained marijuana. The police searched the dresser and uncovered the following items: four bags of marijuana weighing 9.85 grams; clear plastic sandwich bags, commonly used for packaging illegal drugs; a gallon size Ziploc bag with marijuana residue inside; and a quart size bag containing a small amount of residue. On top of the dresser, officers found a digital scale and petitioner's state-issued identification card. Officers found $1035 in the bed in petitioner's room. Finally, officers found a "receipt" bearing petitioner's name on top of the bed. Viewed in context with the record as a whole, the Delaware Supreme Court

reasonably concluded that the "overwhelming weight of the evidence favored the State."

*Gregory*, 2011 WL 4985654, at *4.

Second, the trial court took steps to mitigate the effect of the improper

statements.  For instance, the trial court sustained defense counsel's objections to the

State's two improper comments, which caused the prosecutor to alter his line of

questioning.  Additionally, the trial court instructed the jury as follows:

> [W]hat an attorney states in opening or closing arguments is not evidence.
> Arguments are merely made to assist you in organizing the evidence and
> to suggest a logical conclusion that may be reached from the evidence
> presented.
>
> *      *      *
>
> You are instructed to disregard any personal opinions or beliefs offered by
> an attorney during opening or closing statements, or at any other time
> during trial.

(D.I. 16, Trial Transcript Nov. 30, 2010 at 29)  Considering that juries are presumed to

follow instructions given by the trial court, the court concludes that this jury instruction

also mitigated any unfair prejudice to petitioner that may have been caused by the

State's two improper remarks.  *See Richardson v. Marsh*, 481 U.S. 200, 206-07 (1987).

In sum, given the deferential standard of review this court must apply to the

Delaware Supreme Court's decision, the court concludes that the Delaware Supreme

Court denial of claim five constituted a reasonable application of *Darden* and its

progeny.  The State's first comment was not improper.  As for the two improper

comments, there was substantial evidence against petitioner and he failed to show that

the two comments caused prejudice.  Accordingly, the court will deny claim five for

failing to satisfy § 2254(d).

14

## V.  CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty.  *See* 3d Cir. L.A.R. 22.2 (2011).  The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Further, when a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  *Slack*, 529 U.S. at 484.

For the reasons stated above, the court concludes that petitioner's habeas application must be denied.  Reasonable jurists would not find this conclusion debatable.  Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI.  CONCLUSION

For the foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254.  An appropriate order will be entered.

15